

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Lesley C. Stephens, | ) | |
| | ) | |
| Plaintiffs, | ) | No.   06 C 0176 |
| | ) | |
| vs. | ) | |
| | ) | |
| Michael J. Picardi, Charles Erickson, | ) | |
| Kevin Murray, Vernita Ray, Karen | ) | The Honorable William J. Hibbler |
| Phillips, Glen Tatara, William | ) | |
| Longergan, in their individual | ) | |
| capacities as agents of the | ) | |
| City of Chicago, and the City of | ) | |
| Chicago, a municipal corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

The Plaintiff filed a five-count amended complaint against Defendant City of Chicago ("the City") and individual Defendants Michael J. Picardi ("Picardi"), Charles Erickson ("Erickson"), Kevin Murray ("Murray"), Vernita Ray ("Ray"), Karen Phillips ("Phillips"), Glen Tatara ("Tatara"), and William Lonergan ("Lonergan'). Plaintiff alleges retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 (e) et. seq. and 42 U.S.C. § 1981. In particular, Count I is brought against the City for retaliation in violation of Title VII. Count II is brought against the City, Picardi, Erickson, Murray, and Phillips for violations of Section 1981. Count III is brought against the City, Picardi, Erickson, and Ray for violations of Section 1981. Count IV is brought against the City, Picardi, Tatara, and Ray for violations of Section 1981. Lastly, Count V is brought against the City, Picardi, and Lonergan for violations of Section 1981. Before the Court is Defendants' motion

1

to dismiss the Second Amended Complaint pursuant to *Fed. R. Civ. P. 12(b)(6)*. For the reasons stated herein, Defendants' motion to dismiss is GRANTED in part and DENIED in part.

## I. Factual Background

In resolving a motion to dismiss, the Court takes as true the following facts from Plaintiff's complaint. Plaintiff Stephens began his employment with City of Chicago Department of Public Works as a Motor Truck Driver in June 1979. In 1987, after several promotions and transfers, Stephens became the Acting Assistant Superintendent and Acting General Foreman of the Department of Fleet Management. In 1993, the City reassigned Stephens to the position of Accident Adjuster. In 1997, Stephens filed a complaint with the Equal Employment Opportunity Commission ("EEOC") against the City alleging discrimination and retaliation. In 2004, the City and Stephens entered into a settlement agreement regarding his EEOC complaint.

Stephens alleges that he has continued to experience instances of discrimination and retaliation subsequent to the resolution of his prior EEOC complaint. Stephens maintains that between March, 2004 and August, 2004 he applied for four separate promotions, all of which he was qualified for, and all position for which he was not selected. In particular, on August 27, 2004, Defendants Erickson, Murray, and Phillips interviewed Stephens for two Manager of Vehicle Maintenance positions - one with the Department of Fleet Management and the other with the Bureau of Police Motor Maintenance. On September 13, 2004, the City notified Stephens that he was not selected for either position. On September 10, 2004, Defendants Erickson and Ray interviewed Stephens for a Director of Maintenance Operations position. On September 15, 2004, the City notified Stephens that he was not selected for the position. On September 22, 2004,

Defendants Tatara and Ray interviewed Stephens for two Manager of Vehicle Maintenance positions, again one with the Department of Fleet Management and the other with the Bureau of Police Motor Maintenance. The City notified Plaintiff that he had not been selected for these positions on September 24, 2004. Lastly, on October 5, 2004, Defendant Lonergan interviewed Stephens for a Manager of Vehicle Maintenance position for the Department of Aviation. The City notified Stephens that he was not selected for that position on October 15, 2004. On August 1, 2005, Stephens filed a complaint with the EEOC alleging that his failure to be promoted was based upon discrimination due to his race and in retaliation for his complaints of discrimination.

## II. Standard of Review

Motions to dismiss under *Rule 12(b)(6)* test the sufficiency of the complaint rather than the merits of the case. *Midwest Gas. Serv. v. Indiana Gas Co.*, 317 F.3d 703, 714 (7th Cir. 2003). In reviewing a motion to dismiss, a court construes all allegations in the complaint in the light most favorable to the plaintiff, taking all well-pleaded facts and allegations within the complaint as true. *Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir. 2002); *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000). The moving party bears the burden of showing beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). A complaint is not required to allege all or any of the facts logically entailed by the claim. *Bennet v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998).

## III. Analysis

### A. Untimely Allegations of Discrimination

Title VII sets forth the relevant time for filing charges as follows:

> ... in case of an unlawful employment practice with respect to which the person has initially instituted proceeding with a State or local agency with authority to grant or seek relief from such practice or institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved withing three hundred days after the alleged unlawful employment practice occurred. ...

42 U.S.C.A. § 2000e-5(e)(1). Therefore, "According to statute, a plaintiff in a deferral state such as Illinois must file a charge of discrimination with the EEOC or equivalent state agency within 300 days after the alleged unlawful employment practice." *Sharp v. United Airlines, Inc.*, 236 F.3d 368, 372 (7th Cir. 2001)(internal citations omitted). In the instant case, Plaintiff Stephens filed his EEOC charge alleging discrimination on August 1, 2005. Therefore, discriminatory acts that allegedly occurred prior to October 5, 2004, 300 days before the charges were filed, are not actionable under Title VII. Untimely discriminatory acts may only be considered for background purposes. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002).

Plaintiff, however, contends that these discriminatory acts are not time-barred because they are part of a "continuing violation" by the City of Chicago. The Seventh Circuit has discussed three different continuing violation theories:

> The first theory encompasses decisions, usually relating to hiring and promotions, where the employer's decision-making process takes place over a period of time, making it difficult to determine the actual date of the allegedly discriminatory act. In such instances, the statute of limitations begins running for the claim when the plaintiff knows that the decision has been made. . . . The second continuing violation theory involves an employer's express, openly espoused policy that is alleged to be discriminatory. . . . Finally, a plaintiff can show a continuing violation where an employer covertly follows a practice of discrimination over a period of time. In

4

> such a case, the plaintiff can only realize that she is a victim of discrimination after a series of discrete acts has occurred. The limitations period begins to run when the plaintiff gains such insight. However, if the plaintiff knew, or 'with the exercise of reasonable diligence would have known after each act that it was discriminatory and had harmed' her, she must sue over that act within the relevant statute of limitations.

*Jones v. Merchants Nat. Bank & Trust Co. of Indianapolis*, 42 F.3d 1054, 1058 (7th Cir. 1994)(internal citations omitted). In determining whether plaintiffs should have known the alleged acts were discriminatory when they happened, the court considers: (1) whether the alleged acts against the plaintiff involved the same subject matter; (2) the frequency with which the acts occurred; and (3) the degree of permanence of the alleged acts of discrimination that should trigger an employee's awareness and duty to assert his rights. *Tinner v. United Ins. Co. of Am.*, 308 F.3d 697, 708 (7th Cir. 2002). "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice." *Morgan*, 536 U.S. at 114.

In the case *sub judice*, Stephens acknowledged that he was notified on four separate occasions - September 13, September 15, September 24, and October 15, 2004 - of the City of Chicago's decision not to promote him. Stephens further acknowledged that he has continued to experience discriminatory actions by the City since filing and settling his prior complaints of discriminatory. As analyzed in *Tinner*, the purported discriminatory acts alleged by Plaintiff were not discrete and, in fact, were too permanent to support the contention that the acts were continuous. Stephens untimely allegations of discrimination involve discrete decisions by the City not to promote him, and thus constitute separate actionable employment actions under *Morgan*. Therefore, the Court finds that the three alleged discriminatory acts occurring prior to October 5, 2004 in Count I

are time-barred.

## B. Qualified Immunity

Stephens brings a §1981 claim against the individual Defendants alleging that he was denied promotions based upon his race. Defendants contend that they are entitled to qualified immunity because Plaintiff fails to identify whether the individual defendants had actual authority to deny the promotions. Government officials are protected from civil liability when performing discretionary functions as long as "their conduct does not violate clearly established constitutional rights of which a reasonable person would have known." See *Alvarado v. Litscher,* 267 F.3d 648, 652 (7th Cir. 2001)(quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). Dismissal under Rule 12(b)(6) of a Section 1983 action based on qualified immunity, however, is a "delicate matter." *Jacobs v. City of Chicago,* 215 F.3d 758, 765 n.3 (7th Cir. 2000). Because an immunity defense usually depends on the facts of the case, dismissal at the pleading stage is inappropriate: "[T]he plaintiff is not required initially to plead factual allegations that anticipate and overcome a defense of qualified immunity." *Id.*; *Alvarado,* 267 F.3d at 651. To determine qualified immunity in the context of a motion to dismiss, the Court examines whether (1) the complaint adequately alleges facts that, if true, constitute a violation of a constitutional right, and (2) that constitutional right was clearly established at the time of the alleged violation. *Kiddy-Brown v. Blagojevich,* 408 F.3d 346, 353 (7th Cir. 2005). The Court thus turns to the liberal notice pleading standards under *Rule 8(a)(2)* to discern whether Stephens has alleged a constitutional claim.

Viewing the facts in a light most favorable to Plaintiff, Stephens has sufficiently pleaded a claim under Section 1981. Specifically, Stephens alleges that he was a member of a protected class, namely, that he is African-American; that he failed to receive several promotions; and that he was

treated differently than a similarly situated employee. Further, Plaintiff's Complaint alleges that the individual Defendants acted as "decision makers." Contrary to Defendants' assertion otherwise, it is a reasonable inference that the "decision makers" conducting Plaintiff's interviews, may have had final authority to determine the selection.

The inquiry, however, does not stop there. Next, the Court must determine whether Stephens' discrimination claim was clearly established at the time of the alleged violation in 2004. Under § 1981, "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to the full and equal benefit of all laws . . . as is enjoyed by white citizens." 42 U.S.C. § 1981. Therefore, depriving a person of her employment on the basis of race constitutes a constitutional violation. As such, the constitutional violation alleged by Stephens was clearly established at the time Stephens failed to receive the promotions. See *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982) ("If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct."). For these reasons, the Court denies Defendants' motion to dismiss Stephens' Section 1981 against the individual Defendants claims at this stage of the proceedings.

## C. Failure to Plead the Existence of a Contract

Defendants also argue that Plaintiff's § 1981 claim must be rejected because Plaintiff fails to plead the existence of a contract. Section 1981 prohibits racial discrimination in "the making, performance, modification, and termination of contracts" and in the "enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Citing to *Gonzalez v. Ingersoll Milling Machine Co.*, 133 F.3d 1025 (7th Cir. 1998), Defendants contend that at will employees cannot bring § 1981 claims for failure to promote because they do not work under

7

employment contracts. In *Gonzalez*, the Court of Appeals for the Seventh Circuit suggested in dicta that at will employees might not have the requisite contractual relationship with their employers necessary to support a § 1981 claim. *Id.* at 1034-35.

Contrary to Defendants' assertions otherwise, the fact that Stephens is an at-will employee is of no moment. Section 1981 applies to at-will employees such as Stephens. *See Walker v. Abbott Laboratories*, 340 F.3d 471, 478 (7th Cir. 2003). While it is true that proof of a contractual relationship is necessary to establish a § 1981 claim, at-will employment relationships are sufficiently contractual in nature to maintain a § 1981 action for discrimination, at least with regard to issues of promotion and pay. *Id.* at 475, 478. At-will employees are capable of losing or quitting their employment at any time, but they still maintain the enforceable contractual rights of wages, benefits, duties, and working conditions. *Id.* at 476. Therefore, although at-will employees may not be able to raise § 1981 claims with respect to termination or lay-off, they may maintain § 1981 claims for issues of wages, benefits (including promotions), duties, and working conditions.

## D. Municipal Liability

Additionally, Plaintiff Stephens asserts municipal liability claims against the City of Chicago. Defendants move to dismiss this count pursuant to *Monell v. Department of Social Services*, 436 U.S. 658, 694, 56 L.Ed. 2d 611, 98 S. Ct. 2018 (1978) and its progeny. The law utilized for analyzing § 1983 cases, such as *Monell*, apply as well to suits brought under § 1981. *Smith v. Chicago School Reform Bd. of Trans.*, 165 F.3d 1142, 1147 (7th Cir. 1999). Therefore, Stephens must show that an "official policy" or "widespread custom" is responsible for a deprivation of a right protected by the Constitution. See *Monell*, 436 U.S. at 694; *Looper Maintenance Serv. v. City of Indianapolis*, 197 F.3d 908, 9013 (7th Cir. 1999). A municipality can be said to have violated the

8

civil rights of a person because of its policy where: 1) an express policy that, when enforced, causes a constitution deprivation; 2) a widespread practice that, although not authorized by written law or express municipal, is so permanent and well settled as to constitute a custom of usage with the force of law; or 3) an allegation that the constitutional injury was caused by a person with "final policymaking authority." *McGreal v. Ostrov*, 368 F.3d 657, 684 (7th Cir. 2004). Plaintiffs may not establish a municipal liability unless they can demonstrate that the enforcement of its policy was the "moving force" behind the constitutional violation. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 85 L.Ed. 2d 791, 105 S. Ct 2427 (1985).

Applying these standards, the Court believes that there is a reasonable inference that the state actors, that the Complaint alleges were "decision makers," may have had final policymaking authority. The Court, however, finds that Stephens' Complaint fails to allege facts indicating the existence of an express policy or custom that deprived him of his constitutional rights. Specifically, the Complaint alleges that:

> Defendant City of Chicago promotes employees to the foregoing and similar managerial positions whether or not a specific opening occurs and whether or not it holds interviews for the openings in question...

Complaint ¶ 39. In addition, the Complaint alleges:

> To date, despite Plaintiff's continued status on Defendant City of Chicago's eligibility lists for promotion to the foregoing and to similar managerial positions, Defendants have refused and continue to refuse to promote Plaintiff to a position commensurate with this experience and capabilities.

Complaint ¶ 40. These allegations, however, fail to identify an express policy or custom that deprive Plaintiff of his constitutional rights. If Stephens amends his § 1981 claim in accordance with this opinion, he must also include specific allegations that support one of the three theories set forth by

forth by the Seventh Circuit in *McGreal*. The Seventh Circuit has held that courts must not apply a heightened pleading standard in civil rights cases alleging § 1983 municipal liability. *McCormick v. City of Chicago*, 230 F.3d 319, 323 (7th Cir. 2000)(*citing Leatherman v. Tarrant County Narc. Intelligence and Coordination Unit*, 507 U.S. 163, 164, 122 L.Ed.2d 517, 113 S. Ct. 1160 (1993)). The *McCormick* court also reasoned that while Plaintiffs are not required allege all of the facts entailed by the claim, a plaintiff is required to set forth operative facts for the basis of the claim. *Id.* The Plaintiff has not done so here. Therefore, the City is dismissed without prejudice from Counts II through V.

## IV. CONCLUSION

For the reasons stated herein, the Court dismisses the three underlying discriminatory acts occurring prior to October 5, 2004 in Count I. Additionally, the Court dismisses the City of Chicago without prejudice from Counts II - V. Plaintiff is instructed to file an amended complaint in accordance with this opinion within twenty-one (21) days from the date of this opinion or the City of Chicago will be dismissed with prejudice from the instant action.

IT IS SO ORDERED.

9/12/06
Dated

The Honorable William J. Hibbler
United States District Court.